AO 91 (Rev. 11/11)  Criminal Complaint

**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Texas

United States Courts
Southern District of Texas
**FILED**
*August 30, 2024*

Nathan Ochsner, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| GHOLAM REZA GOODARZI aka Ron Goodarzi | ) | **4:24-mj-385** |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __12/1/2020 to 7/5/2024__ in the county of __Harris__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 554 | Smuggling Goods From the United States |

This criminal complaint is based on these facts:

see attached Affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

FBI Special Agent Michael Herman
*Printed name and title*

Sworn to before me and signed by telephone

Date: August 30, 2024

*Judge's signature*

City and state: Houston, Texas

Yvonne Y. Ho, United States Magistrate Judge
*Printed name and title*

Sealed
Public and unofficial staff access to this instrument are prohibited by court order

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § § | |
| v. | § § | **CRIMINAL NO.**  4:24-mj-385 |
| **GHOLAM REZA GOODARZI** a/k/a Ron GOODARZI | § § § § | **UNDER SEAL** |

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Michael J. Herman, being first duly sworn, hereby depose and state as follows:

1. I am a Special Agent of the United States Federal Bureau of Investigation (FBI), and I have served in that role since 2008. I am currently assigned to the FBI's Houston Field Office where I investigate illicit, global procurement networks that have a foreign intelligence nexus. As an FBI Special Agent, I have conducted both criminal and counterintelligence investigations, including investigations into the illegal export of controlled goods and technologies from the United States. Thus, I am familiar with the procedures and methodologies used by individuals, criminal networks, and foreign state actors to illegally procure items from the United States; typical money laundering practices of both criminal and state actor organizations; and the illicit shipping methodologies used to covertly transport illegal goods into and out of the United States. I have received basic law enforcement training at the FBI Academy in Quantico, Virginia, as well as specialized training in counterintelligence, counterterrorism, counter-proliferation, and U.S. commerce laws and regulations.

2. This affidavit is being submitted in support of a Criminal Complaint for **GHOLAM REZA GOODARZI a/k/a Ron GOODARZI** ("GOODARZI").

3. The factual information supplied in this affidavit is based upon your Affiant's own investigation of this matter, as well as information provided by other law enforcement officers.

1

4. Based on my training and experience and the facts set forth in this Affidavit, I believe probable cause has been established to show that **GHOLAM REZA GOODARZI** has violated Title 18, United States Code, Section 554 (Smuggling Goods From the United States).

5. Title 18, United States Code, Section 554 (Smuggling Goods From the United States), makes it a crime to fraudulently or knowingly export merchandise from the United States in any manner that is contrary to federal law or regulations. Accordingly, it is illegal for any person to fraudulently or knowingly export or send from the United States, or attempt to export or send from the United States, any type of merchandise, article, or object in a manner that is contrary to any law or regulation of the United States; or to receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing that such merchandise or article is intended for export in a manner that is contrary to any law or regulation of the United States. The maximum statutory punishment for a violation of Section 554 is not more than 10 years imprisonment, a criminal fine of not more than $250,000, or both.

6. Pursuant to the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 – 1707, the President of the United States has the authority to deal with unusual and extraordinary threats to the national security, foreign policy, and economy of the United States. Under IEEPA, the President may declare a national emergency through Executive Orders that have the full force and effect of law.

7. On March 15, 1995, the President issued Executive Order 12957, finding that "the actions and policies of the Government of Iran constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States and … declare[d] a national emergency to deal with that threat." On May 6, 1995, the President issued Executive Order 12959

to take additional steps with respect to the national emergency declared in Executive Order 12957 and to impose comprehensive trade and financial sanctions on Iran. These sanctions prohibited, among other things, the exportation or re-exportation to Iran or the Government of Iran of any goods, technology, or services from the United States.

8. On August 17, 1997, the President issued Executive Order 13059, which consolidated and clarified Executive Orders 12957 and 12959 (collectively, "Executive Orders"). In addition to the prohibitions contained in Executive Orders 12957 and 12959, Executive Order 13059 prohibited the exportation, re-exportation, sale, or supply, directly or indirectly from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran. This prohibition included the exportation, re-exportation, sale, or supply of goods, technology, or services to a person in a third country with knowledge or reason to know that such goods, technology, or services were intended specifically for supply, transshipment, or re-exportation, directly or indirectly, to Iran or the Government of Iran. The Executive Orders authorized the United States Department of the Treasury to promulgate rules and regulations necessary to carry out the Executive Orders. Pursuant to this authority, the Secretary of the Treasury, through the Office of Foreign Assets Control ("OFAC"), issued the Iranian Transactions Regulations ("ITR"), subsequently renamed the Iran Transactions and Sanctions Regulations ("ITSR"), 31 C.F.R. Part 560, implementing the sanctions imposed by the Executive Orders.

9. The ITSR imposed, among others, the following prohibitions:

Section 560.203 – Evasions; attempts; causing violations; conspiracies.

    (a)    Any transaction on or after the effective date that evades or avoids, has the purpose of evading or avoiding, causes a violation of, or attempts to violate any of the prohibitions set forth in this part is prohibited.

>  (b)   Any conspiracy formed to violate any of the prohibitions set forth in this part is prohibited.

Section 560.204 – Prohibited exportation, re-exportation, sale, or supply of goods, technology, or services to Iran.

Except as otherwise authorized[,] . . . the exportation, re-exportation, sale or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran is prohibited, including the exportation, re-exportation, sale, or supply of any goods, technology, or services to a person in a third country undertaken with knowledge or reason to know that:

>  (a)   Such goods, technology, or services are intended specifically for supply, transshipment, or re-exportation, directly or indirectly, to Iran or the Government of Iran; or

>  (b)   Such goods, technology, or services are intended specifically for use in the production of, for commingling with, or for incorporation into goods, technology, or services to be directly or indirectly supplied, transshipped, or re-exported exclusively or predominantly to Iran or the Government of Iran.

12.   Gholam Reza GOODARZI, a/k/a Ron GOODARZI, is a dual United States/Iran citizen, who resides in both Porter, Texas, and Iran. GOODARZI engages in the procurement and export of aircraft and oil and gas drilling components to Iran. Specifically, he purchases U.S.-origin aircraft components from U.S.-based suppliers and then exports them to Iran typically through Dubai, UAE, using Dubai-based companies. He also uses foreign suppliers to transship parts to Iran and smuggles parts in his checked luggage while personally traveling to and from Iran.

13.   In October 2016, GOODARZI was stopped by the U.S. Customs and Border Protection ("CBP") upon entry at the George Bush Intercontinental Airport in Houston, Texas. During the border search, he provided gr.GOODARZI@yahoo.com ("Yahoo Account") as his email method of contact. The Yahoo Account was searched pursuant to a search warrant issued in the Southern District of Texas. In those emails, GOODARZI identified himself as "G.R. GOODARZI" or "Ron." Since 2018, GOODARZI's Yahoo Account has sent hundreds of emails to

asemansazan@yahoo.com ("ASP Account"), an email address used by **ASEMAN SAZAN POUYA TRADING CO. LTD**, a company based in Iran which procures U.S.-origin aviation parts.

14. On June 6, 2022, GOODARZI's Yahoo Account sent an email to the ASP Account stating that, "*On Wednesday June, I plan to bring for you the two parcels from [U.S. Company 1] plus 100 Champion spark plugs RCJ6Y.*" On June 10, 2022, GOODARZI's Yahoo Account sent an email to the ASP Account with subject line "Re i Am In Tehran" and stated that, "*I have 100 Champion spark plugs plus the 2 orders from [U.S. Company 1].*" According to CBP records, GOODARZI departed the U.S. on an outbound international flight on June 8, 2022. Further review of email search warrant returns revealed that U.S. Company 1 is an oil and gas parts supplier in the Houston, Texas area that GOODARZI has used to procure oil, gas, and occasional aerospace parts, as well as larger, heavier parts that GOODARZI cannot receive at his apartment residence.

15. In October 2022, GOODARZI was stopped by CBP upon entry at the George Bush Intercontinental Airport in Houston, Texas. During the border search, he provided ron.GOODARZI@gmail.com ("Google Account") as his email method of contact. Pursuant to a search warrant issued in the Southern District of Texas, agents reviewed the emails associated with GOODARZI's Google Account.

16. In August 2021, an email conversation occurred between the Google Account and a Russian aircraft tire supplier. After numerous communications, they settled on a deal for 120 used Michelin retread tires for Boeing 737 aircraft that would be shipped in a 20-foot shipping container from Russia to Iran via the Caspian Sea. When discussing the shipment, the Russian employee specifically instructed GOODARZI to not include Iran as the end-user of the tires on the paperwork because of sanctions, and they discussed handling purchasing paperwork showing a notional end user in Turkey. The Russian tire company then arranged shipment via a trusted Russian freight

5

forwarder that the Russian supplier used for Iran shipments. Once the details had been worked out, GOODARZI emailed the ASP Account with the details, stating "*customs clearance. Contract with any foreign company except Iran. All prices are subject to FCA-warehouse Melaris Moscow region.*" I know from my training and experience that due to international sanctions against Iran, some companies, including in Russia, that do business with Iran will not openly ship products to Iran to avoid being sanctioned. Thus, some companies will conceal the fact that their products are destined for Iran by creating a paper trail that falsely identifies end users in third countries, such as Turkey and UAE.

17. On February 27, 2022, GOODARZI's Yahoo Account sent an email to the ASP Account stating, "*I might be able to bring you a few toggle switches (PN: MS24658-31F) this week. I must pay $100 extra for a rapid delivery.*" CBP records show that GOODARZI departed the U.S. on an international flight bound for Iran on March 13, 2022. According to an open-source search, the above part number is for a military grade toggle switch used in the aviation industry and produced in the U.S. by Honeywell.

18. On November 11, 2022, GOODARZI's Yahoo Account sent an email to the ASP Account stating, "*Do you want me to send the Malin Lockwires to you now or wait for my next trip?*" The ASP Account replied, "*We will wait for your next trip.*" According to an open-source search, Malin Lockwire is used for aerospace applications. CBP records show that GOODARZI left the U.S. on an international flight bound for Iran less than two weeks later on November 24, 2022.

19. On May 8, 2023, at George Bush Intercontinental Airport in Houston, Texas, CBP officers conducted a border search of GOODARZI's checked luggage. This search was done without GOODARZI's knowledge. GOODARZI was booked on an outbound international flight

with a final destination of Tehran, Iran. GOODARZI had two large, checked suitcases. CBP officers found an assortment of aircraft parts and components destined for Iran. Included in GOODARZI's luggage were the following parts:

- Tillotson HR196A Unmanned Aircraft carburetors marked "NOT FOR USE IN MANNED FLYING CRAFT"
- 449 Aeronautical washers
- FAA-PMA Strobe lamp, for Boeing 727 or 737 aircraft P/N 55-0331-3A
- Spools of Malin Aircraft Stainless Steel Lockwire
- Several Cessna 401 Delco-Remy Voltage Regulators P/N 9000591
- Various types of aeronautical light bulbs shipped from aircraft supplier
- Other unidentifiable electrical components

20.     All of the above listed components have been used in the production of large Unmanned Aerial Vehicles (UAVs) and other manned flying aircraft. Though used for UAVs, the Tillotson carburetors listed above are also often used in other small engines such as snowmobiles and go-karts.

21.     On September 8, 2023, at George Bush Intercontinental Airport in Houston, Texas, CBP conducted a border search of GOODARZI's checked luggage.  This search was done without GOODARZI's knowledge. GOODARZI was booked on an outbound international flight with a final destination of Tehran, Iran. GOODARZI had two large, checked suitcases. CBP found an assortment of aircraft parts and components destined for Iran. Included in his luggage were the following parts:

- Aircraft Connectors
- Aircraft Nut Plates
- Aircraft Rivets
- Aircraft Bolts
- Fanfir ball bearings
- Delco Remy Power Transistors
- Aircraft landing light bulb
- Rotating machine seals
- Springs
- Large box of CR2016 batteries

7

22. According to U.S. Air Force technical analysis of the items found in GOODARZI's luggage, the compilation of these parts contains aerospace grade electronics, some mechanical components for high-speed motion, high power electronical components, and seals and bearings also indicating high speed motion. These characteristics are consistent with parts for electrical motor and/or generator applications. The presence of aircraft grade parts could indicate an aerospace application. Examples include a ground stand used to generate aircraft power without engaging the aircraft engine, developing test devices for evaluating aircraft parts, or even for use as a small jet engine starter on a drone aircraft.

23. On January 7, 2024, at George Bush Intercontinental Airport in Houston, Texas, CBP officers conducted a border search of GOODARZI's checked luggage. This search was done without GOODARZI's knowledge. GOODARZI was booked on an outbound international flight with a final destination of Tehran, Iran. GOODARZI and his wife had a total of three large, checked suitcases. CBP officers found an assortment of aircraft parts and components, as well as oil and gas drilling components destined for Iran. Included in his luggage were the following parts:

- Harmonic balancer
- Unknown precision part sealed in rust inhibiting wrap
- Invoice for aerospace grade screws
- Aerospace grade rivets
- Aircraft connectors and connector pins, with pin insertion tool
- Varco stainless steel filters (for oil/gas drilling applications)
- Steel rods
- Various oil/gas drilling parts (seals/TDS11 isolators)
- OFITE Test Equipment – OFI Atmospheric Mud Balancer (used in oil/gas/drilling)
- Dynapar Incremental Encoder - Model Hc62540960241

24. On June 30, 2024, at George Bush Intercontinental Airport in Houston, Texas, CBP officers conducted a border search of GOODARZI's checked luggage. This search was initially done without GOODARZI's knowledge; however, upon finding an assortment of aircraft parts and components destined for Iran, CBP detained the items until a licensing determination could be

made. GOODARZI was booked on an outbound international flight with a final destination of Tehran, Iran. GOODARZI had two large, checked suitcases. Prior to departure, GOODARZI was stopped and notified of the search and detention of the parts, and he was provided a receipt of items detained.

25. During the CBP secondary interview of GOODARZI, he initially told CBP officers that he was traveling to Iran to visit an ill family member. When CBP officers informed GOODARZI about the detention of the parts found in his luggage, GOODARZI responded by stating CBP could take the items because they had no personal value to him. Upon understanding that the items were only being detained, GOODARZI explained that the parts were used in the oilfield industry. He mentioned his past employment with Baker Hughes, stating he has been retired since the mid-90s, and noted that he currently teaches at a university in Iran. When questioned about the two aircraft parts, GOODARZI explained that these parts were used in aircraft that operate in the oilfield, such as those servicing oil platforms. GOODARZI also referred to "his business" when discussing travel to and from Iran and stated he was traveling for business purposes that day. This contradicted his initial claim of traveling to visit an ill family member, but no further inquiry was made into the contradiction. After the encounter, GOODARZI was released to board flight QR 714 and departed the United States for Doha, Qatar, with Tehran, Iran, as his final destination. Items found in his luggage included the following parts:

- AC Delco Remy Voltage Regulators with attached tags identifying them as aircraft parts
- Aircraft bolts
- VS-300MT C series - Three Phase Bridge, 300 A (Power Modules)
- Aerospace Rivet Pins
- Military Standard Steel tension bolts

26. During this border search conducted by CBP, as well as the three previous border searches, the items found were wrapped in articles of clothing, stuffed into rolled socks, stuffed into

shoes, hidden inside pockets of pants and jackets, and zipped into other bags, in what appeared to be an effort to hide the items from being discovered during a baggage inspection.

27. According to the U.S. Department of Commerce's Bureau of Industry and Security (BIS), GOODARZI has never applied for a license to lawfully export items requiring a license from BIS from the United States. Also, according to the U.S. Department of Treasury's Office of Foreign Assets Control (OFAC), GOODARZI has never applied for, nor has he ever received a license to export items to Iran. OFAC also informed the FBI that all the items GOODARZI has carried to Iran in his luggage would require an OFAC License due to U.S. sanctions on Iran.

28. On July 5, 2024, GOODARZI returned to Houston's George Bush Intercontinental Airport from Tehran, Iran. During his interview with CBP officers, GOODARZI stated he traveled to Tehran to handle a family dispute. GOODARZI stated he retired as an Executive with Baker Hughes Oil Company in 1990. GOODARZI stated he worked for Baker Hughes for approximately 35 years, and throughout the years there, he made friends with people from other oil companies around the world. GOODARZI was questioned about the parts seized on his outbound trip on June 30, 2024. GOODARZI stated that the friends he made over the years would request him to bring over industrial parts that they could not get in Iran. GOODARZI stated these parts would be given to individual persons that would then supply them to oil companies.

29. GOODARZI explained that he has purchased parts for Sina Ghafoori in Iran. Ghafoori has been identified as the same individual that used the ASP Account, asemansazan@yahoo.com.

30. On July 5, 2024, CBP officers also conducted a border search of GOODARZI's electronic devices. During the border search, evidence of GOODARZI purchasing parts off eBay

was found. GOODARZI stated he purchased the parts, and his contacts repaid him by booking his travel.

31. A search of his photos found an invoice for Aerospace parts shipped from U.S. Company 2 to Ron GOODARZI at his current home address in Porter, Texas. Also included in his photos were two photos of a grip assembly for an F-4 Phantom fighter jet, which is a U.S.-origin fighter plane manufactured by McDonnell Douglas that is still in operation in the Iranian Air Force.



Other photos of aviation parts were found depicting items already discovered in previous luggage searches.

32. Additionally, a review of recent text message conversations revealed messages explaining that GOODARZI was in Tehran and had the requested parts. Other messages showed GOODARZI negotiating prices for parts to be delivered by him. For example, CBP officers observed a conversation with an individual identified as "Saleh", where they discussed a cryogenic differential pressure gauge manufactured by a company in the United States and which GOODARZI quoted a price of $2500 each. GOODARZI provided what appears to be a bank account number with his full name, and Saleh confirmed money had been sent.

33. Based on information obtained by the government, including the information described above, I believe GOODARZI was aware of the sanctions and prohibitions on exporting items to Iran since at least 2018. Despite this knowledge, GOODARZI willfully exported items to end users in Iran. For example, in one email dated August 22, 2020, GOODARZI told an Iran-based customer that he could not source certain equipment from a U.S. company because of "sanctions" and that he had to acquire the requested equipment from a different source. Specifically, GOODARZI stated, "*Due to current sanctions [U.S. Company 3] does not quote or sell equipment & parts to Iran. Consequently, I must proucure your requested M.I. SWACO choke assemblies from other sources…*"

34. Additionally, GOODARZI deliberately structured his transactions with Iranian customers to circumvent sanctions and conceal his illegal conduct from others. For example, in the August 2021 email chain with a Russian tire supplier (discussed above), GOODARZI explained that "*due to restrictions*" he would not be able to remit payment via banks for the tires destined for Iran and coordinated transhippment of these tires through third party countries. GOODARZI followed through with this purchase and with other transactions and regularly discussed transhipping products or having aircraft parts delivered to Oman or Dubai or other third party countries in order to have them forwarded on to Iran. I know based on my training and experience that individuals who are willfully engaging in sanctions violations will often use third-party countries and freight forwarders in those countries in an effort to circumvent those restrictions.

35. In another email, dated December 4, 2020, GOODARZI explicitly mentioned Iran being an "embargoed" country and informed an individual who was procuring items into Iran that a U.S.

12

based company (U.S. Company 4) would not do business with him if such items were destined for Iran. Specifically, GOODARZI wrote, *"They (U.S. Company 4) know where the destination is & they have received the same request from multiple sources. They will give me prices after I sign a document guaranteeing that the parts are not for embargoed countries such as Iran. I'm not willing to sign such a paper."*

## CONCLUSION

Based on the aforementioned facts, your Affiant respectfully submits that there is probable cause to believe, **GHOLAM REZA GOODARZI** did knowingly violate Title 18, United States Code, Section 554 (Smuggling Goods From the United States).

_____
Special Agent Michael J. Herman
Federal Bureau of Investigation
FBI Houston Field Office

Sworn to and subscribed to me telephonically on this 30th day of August, 2024 and I find probable cause.

_____
YVONNE H. HO
United States Magistrate Judge